.JOHN D. LEWIS AND ANOTHER *v.* LOUISA T. WOODS AND THOMAS B. JONES.

.Since the act of 1860 (Laws of 1860, p. 157, ch. 90), by which a married woman is authorized to " carry on any trade or business * * * on her sole and separate account," a married woman who engages in business on her own account is subject to all the regular rules of business in regard to negotiable paper given by her; and is responsible on such paper, although it is not given for the benefit of her separate estate, nor is specially made a charge thereon.

Where the defendant, a married woman, was engaged in business on her own account, a check made by her agent, regularly authorized for that purpose, although made without consideration, in a matter unconnected with her business, and for the mere accommodation of the payee, yet *Held*, to be good against her in the hands of a *bona fide* holder for value, to whom it was indorsed before maturity.

.EXCEPTIONS to a verdict for plaintiffs ordered to be heard at general term.

The facts are stated in the opinion.

*John A. Shea*, for defendants.

*Martin & Smith*, for plaintiffs.

BY THE COURT.*—ROBINSON, J.—In March, 1866, defendants, being copartners in trade in this city under the firm name of " Woods & Jones," made, by their agent authorized to issue their checks, in the course of the business, a check dated March 8th, 1866, on the Central National Bank, payable to the order of A. P. Gill, for $1,428 74, which, being indorsed by the payee, the plaintiffs received in good faith, before maturity, and paid therefor a valuable consideration.

The defense was, that the check was made by the agent without consideration, for the mere accommodation of the payee, and not in connection with, or within the scope of the partnership transactions, or with the knowledge or consent, satisfaction, or privity of the defendants. And the defendant,

---

* Present, ROBINSON and LOEW, JJ.

Louisa T. Woods, for a separate defense, alleged that she was at the time of the making of the check, and still was, a married woman; that the check was not given within the scope of the partnership business, nor was it connected with or intended for the benefit of her separate estate.

It was proved that John S. Woods, husband of the defendant Louisa, was agent for the firm, with authority to draw checks in its business, and that the check in suit was an accommodation check given by him outside of defendants' business.

By the act of March 12, 1860, a married woman was authorized to " carry on any trade or business, or perform any labor or services, on her sole and separate account." By virtue of this act, she may embark in any trade or mercantile business wherein the giving of checks or other commercial securities are ordinarily used; but if she does so, she must accept its benefits with its disadvantages, and in a mercantile business, assumes the ordinary hazards incident to it, and to which merchants, in the course of whose business commercial paper is ordinarily issued, are exposed by their notes or checks, by accident or wrongful design, getting into the hands of *bona fide* holders, and for value, before maturity; and while they fail to realize any benefit from the transaction, they are yet liable to pay the full amount of the security.

Although Mrs. Woods was a married woman, yet having assumed to act as a " sole trader " and member of a mercantile firm, she accepted the situation, and became responsible as a general partner for the amount of the check, in the same manner and with like effect as if she were an unmarried woman.

There still exists a distinction between debts contracted by a married woman in the course of such trade or business, or for the benefit of her separate estate, and those as to which she is but a surety or guarantor, or which have no connection with either her own trade, business, or separate estate. In the former case, the charge on her separate trade, business, or estate grows out of the very nature and character of the transaction; in the latter, her obligation creates no debt or charge

unless it contains or is accompanied with some written evidence of her intention to charge her separate estate (*Yale* v. *Dederer*, 18 N. Y. 265; s. c. 22 N. Y. 450; *Corn Ex. Ins. Co.* v. *Babcock*, 42 N. Y. 613). This check was no mere suretyship. It was issued by an agent authorized by the firm to make such checks, although in a matter disconnected with its business, and came into the hands of the plaintiffs in due course of business, and in full faith of its validity. "When the principal has clothed his agent with power to do an act upon the existence of some extrinsic fact, necessarily and peculiarly within the knowledge of the agent, and of the existence of which the act of executing the power is itself a representation, a third person dealing with such agent in entire good faith, pursuant to the apparent power, may rely upon the representation, and the principal is estopped from denying its truth to his prejudice" (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 73). As an act of agency, the issuing of this check and its purchase by plaintiffs came within these principles, and as Mrs. Woods was acting entirely *sui juris* in respect to the transaction, she is liable for the amount of the recovery, and judgment should be entered accordingly against her, with five per cent. allowance.

Judgment for plaintiffs.