THE MANHATTAN BRASS AND MANUFACTURING COMPANY, Appellant, *v.* HENRIETTA THOMPSON, Respondent.

A married woman is not liable for property obtained upon her ,credit and contract, but delivered to her husband and for his use, and which is used by him and not for the benefit of her estate, where the intent to charge her separate estate is not expressed in the contract. (GROVER, RAPALLO and JOHNSON, JJ., dissenting.)

(Argued February 27, 1874; decided June 16, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of defendant entered upon the report of a referee.

This action was brought upon a promissory note and also to recover for goods alleged to have been sold to defendant. The referee found the following facts, substantially:

That on or about the 14th day of November, 1870, the defendant signed and delivered to her husband, George W. Thompson, who was at the time carrying on the business of manufacturing and selling mechanical atmospheric lamps, an instrument in writing, of which the following is a copy:

"N. Y., *Nov.* 14, 1870.

"*To the Manhattan Brass Co.:*

"Mr. George W. Thompson is authorized to contract for me, and in my name, with you, for the manufacture of cases for atmospheric oil lamps, and you may hold me responsible for the fulfillment of any contract or obligation made by him with you therefor."

Which instrument Thompson, soon after its receipt, delivered to the plaintiff.

That upon said order plaintiff delivered to Thompson goods of the kind specified therein, for his use and used in his said business, which were charged to defendant; that the note in suit was made by defendant and delivered in payment of a portion of the goods so sold and delivered.

That at the time of the transactions the defendant had and owned a separate estate of her own of considerable value consisting mostly, if not wholly, of real estate situate in this State, and the plaintiff being informed thereof sold and delivered the merchandise, believing and trusting that the defendant had, by her execution of the order, made such separate estate liable for or chargeable with the payment of the prices of such articles of merchandise.

That such goods were not purchased or sold and delivered for the benefit of such separate estate of the defendant, but for the benefit of her husband and of his business; nor was the separate estate of the defendant, in fact, benefited by any of the purchases.

The referee held that defendant was not liable and directed judgment dismissing the complaint. Judgment was perfected accordingly.

*S. B. Brownell* for the appellant. A married woman may employ her husband as her agent and is bound by his acts, and in respect to her separate estate may act and bind herself as a *feme sole*. (*Owen* v. *Cawley*, 36 N. Y., 600; *Ballin* v. *Dillaye*, 37 id., 35; *Yale* v. *Dederer*, 22 id., 450; *Barton* v. *Beer*, 35 Barb., 78; *Corn Ex. Ins. Co.* v. *Babcock*, 9 Abb. [N. S.], 150.) A wife is liable for fraud of her husband acting as her agent. (*Baum* v. *Miller*, 47 N. Y., 577; *Warner* v. *Warner*, 46 id., 228.)

*Samuel A. Noyes* for the respondent. As the goods were not used for the benefit of defendant's estate, and as she did not bind her separate estate to pay them, she is not liable. (*Corn Ex. Ins. Co.* v. *Babcock*, 42 N. Y., 613; *Bogert* v. *Gulick*, 65 Barb., 322.)

CHURCH, Ch. J. As no opinion was delivered below we cannot know the grounds upon which the court affirmed the judgment. The case, in some of its facts, is unlike many of its predecessors, where the liability of married women, upon

contracts made by them, was involved. The general principles applicable to this subject have been too firmly settled by repeated adjudications to justify a reconsideration of the grounds upon which they were arrived at. The most important of these principles is, that the statutes of 1848–49 and 1860–62, did not operate to remove the general disability of married women to bind themselves by their contracts, not even to the extent of their separate estates. (18 N. Y., 265.) This made it necessary to define specifically, in what cases and under what circumstances such contracts could or ought to be enforced against their separate property, and the difficulty of accomplishing this purpose has led to most of the litigation on the subject. It has been held that such liability may be enforced:

1st. When created in or about carrying on a trade or business of the wife. (35 Barb., 78; *Frecking* v. *Rolland*, 53 N. Y., 422.)

2d. When the contract relates to or is made for the benefit of the separate estate. (36 N. Y., 600; 37 id., 35.)

3d. When the intention to charge the separate estate is expressed in the instrument or contract by which the liability is created. (18 N. Y., 265; 22 id., 450; *Maxon* v. *Scott*, Court of Appeals, not reported.)

The property purchased was merchandise, to be used in the manufacture and sale of atmospheric oil lamps. The defendant's husband applied to the plaintiff to purchase the goods, and represented that he was " under a cloud " in his pecuniary affairs, but that his wife had a large separate estate, and that she would make the purchases. After inquiry by the plaintiff as to the responsibility of the defendant, it agreed to sell her the goods on credit. She thereupon signed and delivered to her husband, who delivered the same to the plaintiff, a writing, stating in substance, that her husband was authorized to contract for her and in her name with the plaintiff for the goods in question, and that she would be responsible for the fulfillment of any contract made by him therefor. The goods were accordingly delivered

from time to time to the defendant's husband and charged to the defendant, and the note upon which the action was brought was given for a portion of the goods thus delivered. The referee found as a fact, that the business was carried on by the husband and not by the wife, and that the goods were sold to the wife and delivered to the husband for his use in his business, and that her estate was not benefited by it.

The conclusion of law, that the defendant was not liable, must have been arrived at upon the ground that the obligation of the wife was in the nature of a guarantee or surety for her husband, and that as no intention was expressed to charge her estate the doctrine of disability applied. The facts developed at the trial and found by the referee, present a strong case of moral liability against the defendant for the payment of this debt. There is no doubt that the plaintiff parted with its property, relying entirely upon the security of the separate estate of the defendant, which its officers believed and had reason to believe was liable to pay the debt, and I have examined the case with some care, to find a principle within the adjudications which would justify a decision adjudging such liability, but have been unable to do it. It cannot be predicated upon the third ground above stated, because the separate estate was not charged either in the note or the original order for the goods, but it is claimed under each of the other grounds. Was it a contract relating to, or for the benefit of, the estate of the defendant? The finding of the referee is important upon this point. He found that the goods were delivered to the husband for his use, and were used by him. Is a married woman liable for property or money obtained upon her credit and contract, delivered or paid to the husband for his use, and which is used by him and not for the benefit of her estate? I think we are constrained to answer this question in the negative by previous adjudications. *White* v. *McNett* (33 N. Y., 371) went much farther than this, and farther than as an original question I should be willing to go. There the hus-

band and wife transferred a bond and mortgage owned by the wife, with a guarantee of collection signed by both husband and wife, and because the consideration for the transfer was paid to the husband and was not in fact applied to the benefit of the separate estate, it was held by a majority of the court that she was not liable upon the guarantee. In that case, the wife owned the property transferred, and the contract might properly have been held to relate to it, while here the goods, although purchased upon her credit, passed directly from the seller to the husband for his use. Whatever may be said of the technical title, the property was never possessed for an instant by the wife, and never in legal contemplation applied to the benefit of her estate. Indeed, if we apply the established principle of giving the report the most favorable construction to sustain the judgment, it must be held that the delivery to the husband for his use by the seller was in accordance with the understanding and arrangement of the parties. It cannot be said that the contract related to any estate she then held, nor in view of the findings was it for the benefit of such estate. It was for the benefit of her husband. She purchased property to be delivered to him for his use. In no legal sense was her separate property benefited under such an arrangement, nor could it be, and adhering as the courts have to the common-law disabilities of the wife, it must be held that the liability cannot be established under the second ground above stated. If, when the legislature changed the common law in essential particulars in regarding the interests in property of the husband and wife to a considerable extent as distinct and independent, and in recognizing the capacity of the wife to judge and provide for what her own welfare requires in acquiring and holding the legal title to property, and managing and disposing of the same as if unmarried and without subjection to the control of her husband, the courts had adopted as a reasonable and legitimate sequence, the correlative rule of capacity to contract debts as if unmarried, restricted only to their collection from separate property, it might well

be claimed that the rights of married women would have been as well if not better protected practically, sound public policy, and business morality more promoted, and a flood of expensive and vexatious litigation prevented.

Courts of equity in England have uniformly exercised a power of enforcing contracts of married women against their separate estates, which has practically produced this result. (2 P. Wms., 144; 1 Cr. & Ph., 48.) But our courts have adopted more conservative principles, and it is better to adhere to them until the legislature in its wisdom and power shall see fit to change them.

As to the first ground of liability, that the contract was made in or about carrying on a trade or business, the insuperable difficulty is that the referee has expressly found that the wife did not carry on any trade or business, but that the husband did, and that the property was purchased for his and not her business.

Looking at the evidence it may be said, that the business was carried on in an equivocal manner as to ownership, but the facts fully warranted the finding that the husband owned and carried it on.

We therefore see no legal ground for reversing the judgment, and it must be affirmed.

Allen, Folger and Andrews, JJ., concur.

Grover, Rapallo and Johnson, JJ., dissenting.

Judgment affirmed.